IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John Lewis Addison, Jr., <br><br> Plaintiff, <br><br> v. <br><br> Nancy A. Berryhill, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Civil Action No. 5:16-3017-BHH <br><br> **ORDER** |

This is an action brought pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Acting Commissioner of Social Security's ("Commissioner") final decision, which denied Plaintiff John Lewis Addison, Jr.'s ("Plaintiff") claim for disability insurance benefits ("DIB"). The record includes the report and recommendation ("Report") of United States Magistrate Judge Kaymani D. West, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.).

In her Report, the Magistrate Judge recommends that the Court affirm the Commissioner's final decision denying benefits. Plaintiff filed objections to the Report, and the Commissioner filed a response to those objections. *See* 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's Report within 14 days after being served a copy). For the reasons stated below, the Court adopts the Magistrate Judge's Report and affirms the Commissioner's final decision denying benefits.

**BACKGROUND**

Plaintiff protectively filed for DIB on October 3, 2014, alleging disability beginning on October 2, 2014, due to the following medical conditions: neuropathy, diabetes,

hypertension, knee pain, and post traumatic stress disorder ("PTSD"). His applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 2, 2015, at which Plaintiff, who was represented by counsel, appeared and testified. The ALJ also heard testimony from vocational expert ("VE") Robert E. Brabham, Jr. The ALJ issued a decision dated January 13, 2016, denying Plaintiff's claim. Plaintiff requested review of his decision, and on June 2, 2016, the Appeals Council issued a notice denying Plaintiff's request for review. On July 5, 2016, the Appeals Council notified Plaintiff it was "setting aside [its] earlier action to consider additional information." (Tr. at 1-7.) Upon consideration, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision." (Tr. at 1.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Plaintiff filed this action seeking judicial review of the Commissioner's final decision on September 2, 2016.

Plaintiff was born in 1967 and was 47 years old on his alleged onset date of October 2, 2014. Plaintiff completed high school and has past relevant work as a logistics associate for an automotive manufacturing business. Plaintiff's duties as a logistics associate included loading and unloading trucks with a forklift.

Plaintiff also served in the United States Military for the following dates: September 27, 1985–July 28, 1989 (Marine Corps); November 1, 2002–October 11, 2003 (Army); and January 29, 2007–July 5, 2008 (Army). On November 28, 2011, Plaintiff received a disability Rating Decision from the Department of Veterans Affairs ("VA"). He was given a service connection disability rating of 30 percent for PTSD effective April 28, 2011, and

2

in a VA award letter dated September 26, 2014, Plaintiff was provided a 100 percent disability evaluation and was "considered to be totally and permanently disabled due to [his] service-connected disabilities." (Tr. at 303.) A second award letter dated October 16, 2014, noted the effective date of his disability as November 24, 2013. (Tr. at 304.)

## STANDARDS OF REVIEW

### I. The Magistrate Judge's Report

The Court conducts a de novo review to those portions of the Report to which a specific objection is made, and this Court may accept, reject, or modify, in whole or in part, the recommendations contained in the Report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the Report to which the objection is made and the basis for the objection. *Id.*

### II. Judicial Review of a Final Decision

The federal judiciary plays a limited role in the administrative scheme as established by the Social Security Act. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

3

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebreeze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether substantial evidence exists, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

**I.  The Commissioner's Final Decision**

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c)  If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a) If the answer is in the affirmative, the final consideration looks to whether the impairment precludes that claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed

4

to the next step. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, taking into account the claimant's medical condition, functional limitations, education, age, and work experience. *Walls*, 296 F.3d at 290.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2, 2014, the alleged onset date. Next, the ALJ determined that Plaintiff has the following severe impairments: diabetes mellitus with neuropathy, bilateral knee degenerative joint disease and arthritis, obesity, PTSD, depression, and anxiety disorder. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). With regard to residual functional capacity ("RFC"), the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff: must change positions without leaving the work station one time per hour; cannot use ladders; can climb stairs, kneel, crawl, and crouch occasionally; can stoop and balance frequently; must avoid concentrated exposure to cold and hazards; is limited to unskilled work with no more than occasional interaction with the general public and frequent interaction with coworkers and supervisors. The ALJ found that Plaintiff was unable to perform his past relevant work, but that, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. Therefore, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of the decision.

## II. The Court's Review[1]

In her Report, the Magistrate Judge evaluated Plaintiff's claims and found them to be without merit. First, the Magistrate Judge rejected Plaintiff's claims that the ALJ erred in her credibility and RFC assessments. Next, the Magistrate Judge found that the ALJ properly considered Plaintiff's VA disability rating. The Magistrate Judge also found that Plaintiff failed to show that the ALJ should have given more consideration to Plaintiff's treating psychiatrist's records. Finally, the Magistrate Judge rejected Plaintiff's claim that the ALJ erred in her hypothetical to the VE.

Plaintiff filed written objections to the Magistrate Judge' Report. For the most part, Plaintiff's objections simply reiterate certain arguments raised in his brief that the Magistrate Judge specifically rejected, but the Court will consider each of Plaintiff's objections in turn.

### A. The ALJ's Assessment of Plaintiff's RFC

As a first objection, Plaintiff states that the Magistrate Judge erred in determining that substantial evidence supports the ALJ's assessment of Plaintiff's RFC. According to Plaintiff, his mental and emotional limitations, and particularly his PTSD, significantly erode his vocational base, and Plaintiff claims that the ALJ failed to properly take that into consideration. Plaintiff states:

> The Magistrate Judge erroneously determined that the ALJ's RFC Assessment that Plaintiff could maintain frequent contact with coworkers and supervisors is supported by substantial evidence. However, the ALJ's

---

[1] As the Magistrate Judge noted in her Report, numerous Social Security regulations and Social Security Rulings have changed effective March 27, 2017. However, these changes specifically state that they apply to claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1513, 404.1527. Because the instant claim was filed before March 27, 2017, all references are to the prior versions of the regulations in effect when Plaintiff filed his application for benefits, unless otherwise specified.

decision in based on medical records and the Plaintiff's report of his functional capacity on those days and at those times when he is not suffering from the outbreaks of anger and distress associated with PTSD.

(ECF No. 24 at 4.) In addition, Plaintiff asserts that his five-day admission to the VA Hospital for suicidal ideation, which occurred two days after the hearing before the ALJ, provides additional evidence of the severe nature of Plaintiff's PTSD, and he argues that the ALJ should have considered this information in assessing Plaintiff's RFC.

After consideration, the Court finds Plaintiff's objection without merit. As the Magistrate Judge noted in her Report, an individual's RFC is an assessment of his "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p at *1. An ALJ assesses a claimant's RFC "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(a)(4).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p. Thus, an ALJ can give weight to some medical evidence, while disregarding other medical evidence, when determining a claimant's RFC. *See Bacnik v. Colvin*, No. 1:12-cv-801, 2014 WL 3547387, at *4 n. 7 (M.D.N.C. July 17, 2014). However, "'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'"

7

*Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). In other words, the ALJ must "'build an accurate and logical bridge from the evidence to his conclusion.'" *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Here, the Court agrees with the Magistrate Judge that substantial evidence supports the ALJ's assessment of Plaintiff's RFC. As the Magistrate Judge noted, in assessing Plaintiff's RFC, the ALJ reviewed Plaintiff's subjective complaints and the objective evidence as well as the medical opinion evidence and the VA's finding of total disability. The ALJ ultimately found that Plaintiff could perform a reduced range of light, unskilled work with no more than occasional interaction with the general public and frequent interaction with coworkers and supervisors, and the Court finds that the ALJ thoroughly explained the reasons supporting her decision. With respect to Plaintiff's mental and emotional state, the ALJ noted:

> Turning to his PTSD, the claimant said that he has anxiety and anger issues. He also reported suicidal and homicidal thoughts and panic attacks. However, he reported that his medication controls his PTSD to an extent. He indicated that he had these problems while he was working, but that his boss worked with him and would allow him to go and calm down. With respect to his activities, the claimant testified to the following: that he lives with his wife, 17-year old twins, and 11-year old foster child; that he babysits his two-year old granddaughter twice a week; that he goes to church on Sundays; that he spends time surfing the internet and watching television; that he and his wife eat out a lot; that he runs errands; that he goes to the gym; that he drives; that he is a recluse; and that he does laundry and dishes, but does not shop, vacuum or mop.

(Tr. at 173; ECF No. 13-5 at 20.) The ALJ found that claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible because they were not supported by the objective clinical findings and observations.

Specifically, with respect to Plaintiff's mental and emotional state, the ALJ found:

> In terms of the claimant's mental symptoms, the record shows that they are improved with medication [ ]. In November 2014, the claimant reported that he was sleeping longer, was having less nightmares, was less irritable, and had less anxiety. A mental status exam performed at that time was normal [ ]. The local Social Security representative who interviewed the claimant via telephone around that time indicated that no difficulties in understanding, coherency, concentration, or answering questions was observed or perceived [ ]. In July 2015, the claimant stated that his medications were beneficial in helping him sleep and keep calm. At that time, he reported that he was getting along with his family, had variable energy, had a normal appetite, and had decreased concentration and memory. The claimant had a depressed and sad mood, but the rest of his mental status exam was normal. He was calm, cooperative, and pleasant with good eye contact and hygiene. He also had intact short- and long- term cognition and a normal though[t] process. In August 2015, the claimant told his therapy group that he now realized how much his medications helped him [ ]. The claimant has also reported no noticeable side effects from his medication [ ]. In addition to his medication, the claimant participates in group counseling, which he reports is really helpful. Those notes show that the claimant often had an irritable or anxious mood, but always actively participated [ ].
>
> The claimant's allegations are also not consistent with his reported activities. First, the undersigned notes that the claimant stopped working because he recieved a letter from the VA stating that he was unemployable and advising him to quit (as opposed to any physical or mental difficulty performing his job). Second, the claimant remains able to attend to his personal care and perform many household chores. For example, he does laundry, washes dishes, and runs errands. Third, the claimant is active in his community, attending church and his children's sporting events. Fourth, the claimant engages in some recreational activities, such as taking an online course, working out at the gym, and playing games on his tablet. Finally, the claimant testified that he watches his two-year-old granddaughter a few days per week. These activities require both mental and physical abilities, which was similar to those needed to perform work within the residual functional capacity set forth above.

(Tr. at 174; ECF No. 13-5 at 21 (internal citations omitted).)

The ALJ also outlined the medical opinion evidence, including the opinion of psychologist Mark D. Worthen, who opined that Plaintiff's PTSD would have a moderate impairment on his ability to work with co-workers, supervisors, and the general public. (Tr.

at 175; ECF No. 13-5 at 22.) The ALJ gave great weight to the State agency psychological consultant's determination that Plaintiff could perform simple, routine tasks away from the public, finding it "consistent with the objective findings, which show that the claimant often has an irritable or anxious mood, but is able to make good eye contact." (*Id.*)

In addition, the ALJ considered the VA's finding of disability and ultimately gave the decision little weight, noting:

> The VA's definition of disability and the procedures employed to evaluate the degree of disability are different than those prescribed in the Social Security Act. Moreover, this opinion is not supported by the record. Notably, it was assigned at a time when the claimant was working full time. The claimant stopped working because he was told that he could not work and collect disability. Yet, he continues to engage in a variety of daily activities, such as attending meetings, attending church, attending sporting events, working out, running errands, paying bills, and surfing the internet.

(Tr. at 176; ECF No. 13-5 at 23.)

To the extent Plaintiff argues that the ALJ erred in failing to consider Plaintiff's post-hearing hospitalization as evidence of the "doubts" that Plaintiff's treating psychiatrist had about Plaintiff's mental stability, the Court finds that there was no error on the part of the ALJ. As the Magistrate Judge determined, the supplemental records submitted by Plaintiff were new information and "did not affect the decision whether Plaintiff was disabled beginning on or before January 13, 2016." (ECF No. 22 at 25 (citing Tr. at 2).)

In all, the Court agrees with the Magistrate Judge that the ALJ appropriately considered the evidence of record, including Plaintiff's testimony and the medical opinion evidence, in assessing Plaintiff's RFC, and the Court finds that substantial evidence supports the ALJ's finding that Plaintiff could maintain no more than occasional interaction with the general public and frequent interaction with coworkers and supervisors. As the

Magistrate Judge remarked:

> The ALJ's analysis of the evidence provides a logical bridge between the evidence and her RFC findings. The record discloses that the ALJ clearly described Plaintiff's symptoms and impairments, both as testified to by Plaintiff and as described in the medical records, and discussed their impact on Plaintiff's daily activities. The ALJ adequately explained her rationale for determining Plaintiff's RFC and the record evidence provides substantial support for that determination. [ ] The ALJ was in the best position to determine Plaintiff's credibility, [ ] and it is not this court's function to re-weigh the evidence that the ALJ considered and that supports her RFC determination.

(ECF No. 22 at 22.); *see also Mastro,* 270 F.3d at 176 (noting that a reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency in assessing whether substantial evidence supports a decision); *Colvard v. Chater*, 59 F.3d 165, *2 (4th Cir. 1995) ("The determination of a claimant's residual functioning capacity lies with the ALJ, not a physician, and is based upon all relevant evidence.") (citing 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946). Accordingly, the Court finds Plaintiff's first objection without merit.

### B. The ALJ's Hypothetical to the VE

As a second objection, somewhat related to his first, Plaintiff reiterates his claim that substantial evidence does not support the ALJ's conclusion concerning the number of jobs available to Plaintiff. Specifically, Plaintiff contends that the ALJ's hypothetical question to the VE failed to take into account the nature and frequency of Plaintiff's multiple episodes of anger and decompensation caused by his PTSD.

After review, the Court overrules this objection because the Court agrees with the Magistrate Judge, for the reasons set forth above and for the reasons set forth in the Magistrate Judge's Report, that substantial evidence supports the ALJ's RFC assessment

and that the ALJ's hypothetical to the VE fairly included Plaintiff's credible limitations. As the Magistrate Judge explained, the ALJ asked the VE to opine on jobs Plaintiff could perform given his age, education, and work experience, and limiting him to light work with various physical limitations and the mental limitations of unskilled work, no more than "occasional interaction with the general public due to anger issues," and frequent interaction with coworkers and supervisors. (ECF No. 22 at 26 (citing Tr. at 214).) The ALJ also explained to the VE that Plaintiff "does have an anger issue and it has caused him some problems in the past." (*Id.*) In all, because the Court has determined that substantial evidence supports the ALJ's RFC assessment, the Court also finds that substantial evidence supports the limitations contained in the hypothetical question presented to the VE, and the Court therefore finds Plaintiff's objection without merit.

## C. The ALJ's Evaluation of Plaintiff's Credibility[2]

As a final objection, Plaintiff asserts that the ALJ failed to make a proper credibility determination. Plaintiff provides no argument or evidence in support of this objection, and Plaintiff points to no specific error in the Magistrate Judge's Report other than his conclusory assertion that "the reasoning set forth by the ALJ for her rejection of Plaintiff's testimony is flawed and the ALJ's failure to set forth sufficient evidentiary support for his rejection of Plaintiff's testimony is erroneous." (ECF No. 24 at 6.) After review, the Court finds this objection without merit.

---

[2] In March of 2016 the Social Security Administration published S.S.R. 16-3p, 2016 WL 1119029 (2016), which supersedes S.S.R. 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. Because the ALJ decided this case prior to March 16, 2016, the effective date of SSR 16-3p, the Court analyzes the ALJ's decision based on the provisions of S.S.R. 96-7p, which required assessment of the claimant's credibility. Although S.S.R. 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors to be considered under S.S.R. 96-7p.

As the Magistrate Judge stated, an ALJ must consider the extent to which a claimant's self-reported symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. Pursuant to Social Security Ruling 96-7p, if an ALJ finds a claimant to be less than fully credible, the ALJ must cite specific reasons based on the evidence. This Ruling provides:

> It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p. In evaluating a claimant's subjective complaints, the Social Security Regulations direct the Commissioner to consider the following factors:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, as the Court explained above, the ALJ outlined Plaintiff's hearing testimony in her decision and found that Plaintiff's statements "concerning the intensity, persistence

and limiting effects of these symptoms are not entirely credible." (Tr. at 173.) The ALJ then explained her decision by discussing the objective medical evidence, the opinion evidence, and Plaintiff's reported activities of daily living. For the reasons set forth herein and for the reasons set forth in the Magistrate Judge's Report, the Court has little difficulty in determining that Plaintiff has failed to demonstrate that the ALJ's credibility analysis is unsupported by substantial evidence or controlled by an error of law. Accordingly, this objection is overruled.

## CONCLUSION

The Court finds that the Magistrate Judge properly summarized the facts and applied the correct principles of law when she determined that Plaintiff failed to show that the Commissioner's decision was not supported by substantial evidence or that it was reached through application of an incorrect legal standard. Accordingly, it is hereby **ORDERED** that the Magistrate Judge's Report (ECF No. 22) is adopted and incorporated herein; Plaintiff's objections (ECF No. 24) are overruled; and the Commissioner's final decision denying benefits is affirmed.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce H. Hendricks
United States District Judge

March 14, 2018
Charleston, South Carolina